IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| LEROY C. WRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 319-003 |
| | ) |
| MS. FISH, Food Service Director; | ) |
| LIEUTENANT WATTS; | ) |
| SERGEANT SKIPPER; and | ) |
| CORRECTIONAL OFFICER BRUCE, | ) |
| | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, is proceeding *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.   **BACKGROUND**

In a Report and Recommendation ("R&R") issued on March 22, 2019, the Court recommended Plaintiff's original complaint be dismissed for failure to state a claim. (Doc. no. 7.) In response to the Court's R&R, Plaintiff submitted an objection containing a request to amend his complaint in attempt to cure the deficiencies identified by the undersigned.

(See doc. no. 11.)  The Court granted Plaintiff's request to amend his complaint, and it is the amended complaint the Court now screens.  (Doc. no. 13.)

Plaintiff names the following Defendants:  (1) Ms. Fish, Food Service Director at TSP; (2) Lieutenant Watts, Officer at TSP; (3) Sergeant Skipper, Officer at TSP; and (4) FNU Bruce, Correctional Officer at TSP.  (Doc. no. 13, pp. 1-3.)  Plaintiff sues all four Defendants in their individual capacities.  (Id. at 2-3.)  Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On June 9, 10, and 11, 2018, Plaintiff, a Muslim fasting from sunup to sunset in observance of Ramadan, did not receive his meals prior to sunrise as his religious practice required, resulting in Plaintiff experiencing "extreme hunger pains" and losing seven pounds.  (Id. at 5, 12.)  Defendant Fish was responsible for the timely delivery of food trays on all three days, but she did not make sure the trays arrived at Plaintiff's housing unit in time for Plaintiff to eat prior to sunrise.  (Id. at 5, 12.)

On June 9, Defendants Watts and Skipper served meals at approximately 7:00 a.m., and when Plaintiff stated he could not eat because the sun had risen, Defendants told him to "blame food services," forcing Plaintiff to skip eating in favor of following his religious beliefs.  (Id. at 12.)  On June 10, Defendant Skipper did not arrive with Plaintiff's food until 8:20 a.m., and he would not document the meal arrived after sunrise so that Plaintiff could receive a larger portion of food that night.  (Id.)  On June 11, Defendant Bruce timely brought a tray of food to Plaintiff's cell, but even though Plaintiff had previously informed Defendant Bruce he was a vegan, the tray had meat on it.  (Id. at 13.)  Defendant Bruce told

2

Plaintiff he would return with a vegan tray before sunrise, but he never came back with the vegan tray. (Id.)

Plaintiff states he filed a grievance about his "First Amendment Free Exercise of religion claims," grieving (1) Defendants Watts and Skipper deprived him of food on two occasions by bringing the trays after sunrise, and (2) Defendant Bruce never returned with a vegan meal after initially bringing a tray with meat. (Id. at 7.) In response to the grievance, "Defendants were counseled on the importance of delivering religious meals on time." (Id.) Plaintiff did not file an appeal because "the only time one needs to appeal is if the grievance was rejected/denied." (Id.) Additionally, Plaintiff's counselor told him he did not need to appeal. (Id. at 8.)

Plaintiff seeks $70,000 in damages for Defendants violating his constitutional rights, as well as his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, et seq. ("RLUIPA"), by denying Plaintiff food and causing him mental and emotional distress. (Id. at 5.)

## II. DISCUSSION

### A. Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson

3

v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the amended complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B.     Plaintiff Fails to State a Valid § 1983 Claim

#### 1.     Plaintiff Fails to Allege a Valid RLUIPA Claim

Plaintiff claims Defendants' failure to timely deliver his breakfast during three days of Ramadan violates RLUIPA.  Section 3 of RLUIPA provides in relevant part, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . ."  42 U.S.C. § 2000cc-1(a).  A prima facie case under section 3 of RLUIPA requires Plaintiff to show (1) he engaged in a religious exercise; and (2) the religious exercise was substantially burdened.  Smith v. Allen, 502 F.3d 1255, 1266 (11th Cir. 2007), *abrogated on other grounds,* Sossamon v. Texas, 563 U.S. 277 (2011).  A substantial burden is "significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly."  Id. at 1277.  The Eleventh Circuit has explained that to constitute a substantial burden on religious practice, "the government's action must be 'more than . . . incidental' and 'must place more than an inconvenience on religious exercise.' . . . That is, to constitute a substantial burden under RLUIPA, the governmental action must significantly hamper one's religious practice."  Id.

Here, Plaintiff's conclusory assertion the late delivery of his breakfast tray for three days caused a "substantial burden on Plaintiff's religious exercise," does not state a plausible claim for relief.  That is, Plaintiff's formulaic claim, devoid of any factual enhancement, does not show he is entitled to relief.  See Iqbal, 556 U.S. at 678.  Plaintiff does not allege he was unable to observe Ramadan.  Nor does he allege any Defendant exerted significant pressure in an effort to conform his behavior.  While his allegations may show disregard for the importance to Plaintiff of eating before sunrise, none of the actions described by Plaintiff suggest a knowing

understanding or purposeful effort to impact Plaintiff's religious activities, as is further evidenced from the grievance response explaining Defendants were counseled on the importance of timely delivery of meals. While he may have been inconvenienced during the three days, he has not alleged a substantial burden necessary to state a claim under RLUIPA.

In any event, Plaintiff has sued all Defendants in their individual capacity, and it is well established RLUIPA does not create a private action for money damages against officials sued in their individual capacities. Smith, 502 F.3d at 1275. Thus, even if Plaintiff's RLUIPA claims had substantive merit, Plaintiff fails to state a claim for the monetary damages he seeks against Defendants. See Hathcock v. Cohen, 287 F. App'x 793, 801 (11th Cir. 2008) (*per curiam*).

### 2. Plaintiff Fails to Allege a Valid Free Exercise Claim under the First Amendment

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." U.S. Const. amend. I. The Free Exercise clause applies to the States via the Fourteenth Amendment. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 8 n.4 (2004), *abrogated on other grounds*, Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 127 (2014). "[A] complaint fails to state a Free Exercise claim if it does not allege that (1) the plaintiff holds a belief, not a preference, that is sincerely held and religious in nature, not merely secular; and (2) the law at issue in some way impacts the plaintiff's ability to either hold that belief or act pursuant to that belief." GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1256-57 (11th Cir. 2012). Not only does Plaintiff fail to allege he was unable to follow his religious beliefs during the three days in question, but he does not allege a policy

or concerted effort to impact his religious observance of Ramadan. As described above, at best, he claims Defendants were not concerned about timely delivering his breakfast. Three missed meals which were not alleged to have been intentionally withheld or mis-delivered, followed by corrective action upon Plaintiff's grievance submission, does not demonstrate a First Amendment violation. See Hathcock, 287 F. App'x at 801.

### 3. Plaintiff Fails to Allege a Valid Eighth Amendment Claim

To the extent Plaintiff is attempting to state a deliberate indifference claim because he was hungry or inconvenienced for three days because his breakfast did not arrive before dawn, the claim fails. "[T]he Constitution does not mandate comfortable prisons." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Rather, the Eighth Amendment requires that prisoners are afforded adequate food, clothing, shelter, and medical care, and prison officials must take reasonable measures to ensure prisoner safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "Inmates cannot expect the amenities, conveniences and services of a good hotel." Alfred v. Bryant, 378 F. App'x 977, 980 (11th Cir. 2010) (*per curiam*).

Challenges to conditions of confinement are subject to a two-part analysis. Chandler, 379 F.3d at 1289. First, Plaintiff must satisfy an objective prong by showing the conditions about which he complains are sufficiently serious. Id. The conditions of his confinement must be "extreme" such that it "poses an unreasonable risk of serious damage to his future health or safety." Id.; see also Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (*per curiam*); Ivory v. Warden, 600 F. App'x 670, 676-77 (11th Cir. 2015) (*per curiam*). "The risk must be 'so grave that it violates contemporary standards of decency to expose anyone

7

unwillingly to such a risk.'" Redding v. Georgia, 557 F. App'x 840, 843 (11th Cir. 2014) (citing Helling v. McKinney, 509 U.S. 25, 33 (1993)).

Second, Plaintiff must satisfy a subjective prong by showing that Defendants acted with a culpable state of mind, which is judged under a "deliberate indifference" standard. Chandler, 379 F.3d at 1289. "Proof of deliberate indifference requires a great deal more than does proof of negligence." Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013). The prison official must know of and disregard an "excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Id.

Plaintiff's untimely breakfast delivery for three days does not rise to the level of violating contemporary standards of decency. Furthermore, although Plaintiff alleges he experienced hunger pains, he does not allege he was denied food for three days. Indeed, he chose not to eat the meals because of Ramadan not because the food was not supplied to him. He also he concedes evening meals were provided when he complains Defendant Skipper would not increase his evening portion of food. (See doc. no. 13, p. 12.) "[A] prisoner's mere discomfort, without more, does not offend the Eighth Amendment." Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (*per curiam*) (citation omitted). Plaintiff alleges he lost seven pounds, but he alleges no physical harm, and certainly does not allege a loss of seven pounds posed an unreasonable risk of serious damage to his health. See id. (finding no Eighth Amendment violation where inmate routinely deprived of lunch five days per week for approximately five months).

Not only has Plaintiff failed to allege a sufficiently serious condition based on three missed breakfast trays, but nowhere does Plaintiff allege Defendants had the necessary culpable state of mind to know the three missed trays posed a significant risk of harm to Plaintiff. Simply put, the Eighth Amendment requires a prisoner receive reasonably adequate food, and there is no constitutional violation based on "feeding a prisoner a minimal amount of food for a limited number of days." Id. at 865 (citations omitted). In sum, Plaintiff has not alleged extreme conditions that Defendants knew posed an unreasonable risk of serious damage to Plaintiff, and he fails to state a valid Eighth Amendment claim.

### 4. Plaintiff Fails to Allege a Fourteenth Amendment Due Process Claim

Plaintiff twice states his Fourteenth Amendment due process rights were violated. (Doc. no. 13, pp. 3, 12.) However, he provides no factual detail and fails to associate any Defendant with any due process right supposedly violated. In the absence of any factual details to go along with Plaintiff's formulaic label, the Court concludes he fails to state a Fourteenth Amendment due process claim upon which relief can be granted. See Iqbal, 556 U.S. at 678.

### 5. Plaintiff Did Not Exhaust Administrative Remedies as to All of His Claims

Even if Plaintiff had stated a valid claim for relief under RLUIPA or the Eighth or Fourteenth Amendments, those claims are subject to dismissal because of his failure to exhaust administrative remedies.

### a. The Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011) (*per curiam*); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (*per curiam*). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Rather, "[t]his provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and

other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159.

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1]  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter, 534 U.S. at 524.

      **b.**      **Administrative Grievance Procedure at TSP**

Because the events about which Plaintiff complains occurred on June 9-11, 2018, the administrative grievance procedure is governed by the version of the Georgia Department of

---

[1]Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 537-38 (7th Cir. 1999).

Corrections' Standard Operating Procedure ("SOP") 227.02, which became effective February 26, 2018. The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. SOP 227.02 § IV(C). The administrative remedies procedure commences with filing the Original Grievance with a counselor. Id. § IV(C)(1)(c). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(d). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The counselor forwards the grievance to the grievance coordinator, who must screen the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). If the grievance is rejected, the inmate may appeal the rejection to the Central Office. Id. § IV(C)(1)(e)(v).

Accepted grievances are returned to the grievance coordinator for processing. Id. § IV(C)(1)(e)(vi). After an accepted grievance is investigated, the grievance coordinator submits to the Warden a recommendation to grant or deny the grievance. Id. § IV(C)(1)(f)(ii) & (iii). The Warden or his designee will review the information and issue a written decision to grant or deny the grievance. Id. § IV(C)(1)(f)(iv). The inmate may appeal the Warden's decision to the Central Office. Id. § IV(C)(1)(f)(vii).

The SOP requires the Warden give a response to the counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(g). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a Central Office Appeal. Id. § IV(C)(2). The inmate

has seven calendar days from the date he receives the response to the grievance to file a Central Office Appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the offender, at which time the grievance procedure is complete. Id. § (C)(2)(e).

### c. Plaintiff's Failure to Exhaust

In his amended complaint, Plaintiff states he filed a grievance about his "First Amendment Free Exercise of religion claims," complaining Defendants Skipper and Watts deprived him of food on two occasions by bringing it after sunrise, and Defendant Bruce never returned with one meal after promising to do so.[2] (Doc. no. 13, p. 7.) He did not mention Defendant Fish, and he did not complain he had been injured, burdened, or otherwise prevented from observing Ramadan. (Id.)

As described above, Plaintiff complains in this lawsuit his First, Eighth, and Fourteenth Amendment rights, as well as his rights under RLUIPA, were violated. A prisoner is required to "provide as much relevant information as he reasonably can in the administrative grievance process." Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000). Plaintiff does not allege he described any sort of limitation or "substantial burden" on his right to practice his religion, let alone severe hunger pains and mental anguish, but rather says he complained about three Defendants failing to bring his morning meal on three

---

[2]Although Plaintiff failed to attach the grievance to his amended complaint, the copy attached to his objections to the Court's March 22nd R&R supports Plaintiff's description of the grievance and the Warden's response, as well as the conclusion Plaintiff to raise all of the issues about which he now complains. (See doc. no. 11, pp. 10-11.)

13

occasions.  Stated otherwise, the grievance in no way conveyed a problem on the scope, or in the terms, now alleged Plaintiff, and cannot satisfy the exhaustion requirement as to all of his claims.  See Logue v. Chatham Cty. Det. Ctr., 152 F. App'x 781, 783 (11th Cir. 2005) (*per curiam*) (finding prisoner who sued alleging violations of rights to equal protection and access to courts based on jail officials' refusal to copy documents did not exhaust equal protection claim when he filed a grievance about non-compliance with copying policy but did not mention race).

At best, Plaintiff grieved a First Amendment claim, and even then, he provided no details describing the scope and severity of issues he now suggests.  Plaintiff's failure to alert prison officials about all of his current claims would allow him to defeat the aims of PLRA and would not promote "the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy."  Johnson, 418 F.3d at 1159.  "A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."  Solliday, 413 F. App'x at 208.

The Court limits its exhaustion analysis to Plaintiff's failure to alert prison officials to the full scope of his issues in the original grievance.  For the sake of completeness, however, the Court also notes Plaintiff did not complete the two-step grievance process because he did not file an appeal.  Plaintiff claims "the only time one needes [sic] to appeal is if the grievance was rejected/denied."  (Doc. no. 13, p. 7.)  Plaintiff asserts he was granted some relief in the form of counseling to Defendants about the importance of delivering religious meals on time, and therefore, he did not have to appeal.  (Id.)  Nothing in the SOP supports

Plaintiff's assertion the two-step grievance procedure becomes a one-step step procedure based on receiving any response other than rejected/denied. The SOP clearly states the grievance procedure has two steps, and an offender may appeal the Warden's decision to reject a grievance or the Warden's written response to an accepted grievance. Id. §§ IV(C), IV(C)(1)(e)(v), IV(C)(1)(f)(vii). Nevertheless, given the uncertainty over the role of Plaintiff's counselor in not giving Plaintiff an appeal form, (see doc. no. 13, p. 8), the Court limits its exhaustion analysis to the failure to identify all of his issues in the original grievance.

### III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's amended complaint be **DISMISSED** for failure to state a claim upon which relief can be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 14th day of May, 2019, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA